PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MONICO ALBIOLA, | ) | |
| | ) | CASE NO. 4:14CV1645 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| MICHAEL PUGH, Warden, *et al.* | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Defendants. | ) | **AND ORDER** |

*Pro Se* Plaintiff Monico Albiola filed this *Bivens*[1] action against Northeast Ohio Correctional Center ("NEOCC") Warden Michael Pugh, NEOCC Assistant Warden of Operations and Security Dennis Johnson, NEOCC Chief of Security Jose Rodriguez, NEOCC Assistant Chief of Security David Yemma, NEOCC Facility Grievance Officer Sean Daugherty, NEOCC Special Investigative Services ("SIS") Supervisor James Conroy, NEOCC SIS Officer Mr. Macklin, NEOCC SIS Officer Mr. Gonzalez, NEOCC Special Housing Unit ("SHU") Staff Lieutenant Vogelberger, NEOCC SHU Staff Sergeant Kovacich, NEOCC SHU Officer Bender, NEOCC SHU Officer Cashon, NEOCC SHU Officer Badger, NEOCC SHU Officer Sultez, NEOCC SHU Officer Creatore, NEOCC Administrative Order Coordinator R. Lee, NEOCC Delta Unit Manager Ms. Austin, NEOCC Case Manager Mr. McGowan, NEOCC Case Manager Ms. Fox, NEOCC Counselor Ms. Payne, NEOCC Maintenance Officer Mr. Dolhart, NEOCC

---

[1] Under the *Bivens* doctrine, a plaintiff may allege a claim based on an injury of his constitutional rights by a federal employee. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971).

(4:14CV1645)

Warehouse Supervisor Ms. Smith, NEOCC SHU Sergeant V. Aikens, NEOCC Property Room Supervisor Karen Guerriero, NEOCC SHU Sergeant Conley, NEOCC Corrections Officer Brigham, and John Doe Officers of NEOCC. In the Verified Complaint (ECF No. 1), Plaintiff alleges he was compelled to engage in sexual relations with a female corrections officer. He seeks monetary relief.

**I. Background**

Plaintiff is a federal inmate who was incarcerated in NEOCC until he was transferred to CI Rivers in North Carolina in April 2013. ECF No. 1 at PageID #: 29. He contends NEOCC Property Room Supervisor Karen Gurriero began sexually harassing him in January 2012. ECF No. 1 at PageID #: 21. Plaintiff indicates the harassment began with persistent and invasive pat downs and groping (ECF No. 1 at PageID #: 21-22), and escalated to six incidents of oral sex in May and June 2012 (ECF No. 1 at PageID #: 23-25). He was assigned to work in the property room. ECF No. 1 at PageID #: 21 and 23. Plaintiff requested transfer to a new work assignment to remove himself from the situation; however, he was not successful in obtaining full time work in another department. ECF No. 1 at PageID #: 22 and 24. He claims the final incident of sexual contact occurred in June 2012. ECF No. 1 at PageID #: 25.

An investigation into Plaintiff's situation began in July 2012. Plaintiff claims Chief of Security Jose Rodriguez and Assistant Chief of Security David Yemma came to the property room on July 24, 2012 and escorted him to the visitation room where they were joined by SIS Supervisor James Conroy. ECF No. 1 at PageID #: 25-26. Plaintiff was told he was not in trouble, but that he would be placed in administrative segregation while the investigation was

(4:14CV1645)

conducted. The investigation was completed in October 2012. No charges were filed against Plaintiff; however, Rodriguez informed him he was recommending Plaintiff be transferred to another institution due to the nature of the situation. ECF No. 1 at PageID #: 26.

Plaintiff believes NEOCC officers tampered with his food trays when he was in segregation. He claims he found a large live insect in his food in September 2012. ECF No. 1 at PageID #: 26. Four months later, on January 24, 2013, Plaintiff was taken to the medical department complaining of severe abdominal pain, green stool, heart palpitations, shortness of breath, body tremors, a chemical taste in his mouth, and a severe headache. He does not indicate how long he was in the medical department. Plaintiff states he was released to the general population on March 21, 2013. On that same day, he was taken back to segregation and charged with disciplinary infractions. The charges were later dropped. Plaintiff states he became ill with the same symptoms after eating breakfast on April 2, 2013. He contends Officers Cashon, Bender, Creatore and others conspired to tamper with his food trays. ECF No. 1 at PageID #: 28. Plaintiff was transferred from NEOCC on April 16, 2013. ECF No. 1 at PageID #: 29.

Plaintiff also complains about the conditions of his confinement in segregation. He contends he was handcuffed multiple times. Plaintiff claims Officer Sultez made the handcuffs too tight and caused bruises on his hands. He alleges the temperatures in his segregation cell were very cold on January 4-6, 2013. ECF No. 1 at PageID #: 27. Plaintiff states the temperatures in his cell were very cold on January 24, 2013 as well. ECF No. 1 at PageID #: 28.

Plaintiff asserts five claims for relief. First, he asserts Defendants deprived him of his constitutional right to be free from sexual harassment. Second, Plaintiff claims he was denied

3

(4:14CV1645)

due process when he was placed in segregation without a hearing.  Third, he objects to the conditions of confinement to which he was exposed in segregation, including serving him tainted food, exposing him to a cold cell, delivering a meal with an insect on his tray, and denial of appropriate medical care.  Fourth, Plaintiff asserts Defendants have policies and procedures that allowed him to be exposed to adverse conditions.  Finally, he asserts a claim for intentional infliction of emotional distress.  Plaintiff seeks a total of two billion dollars in damages.

## II.  Standard for Dismissal

Although *pro se* pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted or if it lacks an arguable basis in law or fact.  Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996).  An action has no arguable basis in law when a defendant is immune from suit or when a plaintiff claims a violation of a legal interest which clearly does not exist.  Neitzke, 490 U.S. at 327.  An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible."  Denton v. Hernandez, 504 U.S. 25, 33 (1992).  See also Lawler, 898 F.2d at 1199.

When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(4:14CV1645)

(2007). The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." *Id.* (citation omitted). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), further explains the "plausibility" requirement, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Furthermore, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III. Law and Analysis

#### A. Sexual Harassment and Conditions of Confinement Claims

As an initial matter, Plaintiff cannot assert his claims for denial of his constitutional rights against these Defendants. Because the Constitution does not directly provide for damages, Plaintiff must proceed under legal authority that authorizes an award of damages for alleged constitutional violations. *Sanders v. Prentice-Hall Corp. Sys*, No. 97-6138, 1999 WL 115517, at *1 (6th Cir. Feb. 8, 1999). Plaintiff was a federal prisoner incarcerated in NEOCC, a private

(4:14CV1645)

prison owned and operated by Corrections Corporation of America ("CCA"), a private for-profit corporation. *Bivens* provides federal prisoners with a limited cause of action against individual federal government officers acting under color of federal law who are alleged to have acted unconstitutionally. *Correctional Services Corporation v. Malesko*, 534 U.S. 61, 70 (2001).

*Bivens*, however, does not provide relief in all situations. *Bivens*'s purpose is to deter individual federal officers, not the agency, from committing constitutional violations. A *Bivens* action therefore cannot be brought against an entity such as the federal prison, the Bureau of Prisons, or the United States Government. *Id.* For these same reasons, *Bivens* claims cannot be brought against a private prison corporation. *Id.* at 70-74.

The Supreme Court further declined to extend *Bivens* to the employees of a private prison under certain circumstances. *Minneci v. Pollard*, 132 S.Ct. 617, 626 (2012). A federal prisoner seeking damages from privately employed personnel working at a privately operated federal prison for conduct that typically falls within the scope of traditional state tort law, must seek relief under state tort law and cannot pursue the cause of action under *Bivens*, even if Plaintiff states that the conduct violated his constitutional rights.

Here, Plaintiff asserts claims of constitutional violations against numerous employees of NEOCC. To determine if Plaintiff has a federal cause of action under *Bivens*, the Court must determine whether alternative remedies exist to redress the alleged violation of Plaintiff's rights, and whether those alternatives amount to a "convincing reason" to refrain from extending *Bivens* here. *Id.*; *Wilkie v. Robbins*, 551 U.S. 537, 554 (2007). The alternatives need not provide complete relief to preclude the *Bivens* remedy, *see Schweiker v. Chilicky*, 487 U.S. 412, 425

(4:14CV1645)

(1988), and where Congress has created an "elaborate, comprehensive scheme" to address a certain kind of constitutional violation, *Bivens* will generally be unavailable even if that scheme leaves remedial holes. Bush v. Lucas, 462 U.S. 367, 385 (1983). Similarly, where the alternative remedies arise under state law, they need not be "perfectly congruent" with the *Bivens* remedy. The question is whether the alternatives "provide roughly similar incentives for potential defendants to comply with [the constitutional requirements] while also providing roughly similar compensation to victims of violations." Minneci, 132 S.Ct. at 625. Mere "patchwork[s]" of remedies arising from an array of different legal sources may be insufficient to foreclose a remedy under *Bivens*. Wilkie, 551 U.S. at 554.

Plaintiff asserts claims for sexual harassment, tainted or infested food, exposure to very cold temperatures on two occasions, and denial of appropriate medical care. Traditional state tort law provides a remedy for placing another individual in harm's way, if a duty is owed to that individual by the defendant. Consequently, Plaintiff cannot proceed with these claims against the employees of a private prison facility under *Bivens*.

Moreover, even if Plaintiff could proceed with his sexual harassment claim under *Bivens*, the statute of limitations expired for this claim before Plaintiff filed this action. A *Bivens* action is governed by the same personal injury statute of limitations that applies to a 42 U.S.C. § 1983 action. McSurely v. Hutchison, 823 F.2d 1002, 1005 (6th Cir. 1987). In Ohio cases, the two-year statute of limitations found in Ohio Rev. Code § 2305.10 governs. Browning v. Pendleton, 869 F.2d 989, 990 (6th Cir.1989) (en banc). Plaintiff alleges the incidents of sexual harassment

7

(4:14CV1645)

occurred between January 2012 and June 2012. He filed this action on July 22, 2014,[2] more than two years after the last incident of sexual contact occurred. Therefore, even if he had a recognized cause of action under *Bivens*, this claim would be untimely filed.

### B. Due Process Claims

Plaintiff also asserts that he was placed in administrative segregation without a hearing. The Court construes this claim as asserting a denial of procedural due process. Procedural due process claims may not have a corresponding state tort law cause of action. To the extent it may be cognizable against a private prison official under *Bivens*, it nevertheless fails to state a claim upon which relief may be granted.

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law. . . ." U.S. CONST. AMEND. V. In addition to setting the procedural minimum for deprivations of life, liberty, or property, the Due Process Clause bars "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). It does not prohibit every deprivation by the government of a person's life, liberty or property. *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). Only those deprivations which are conducted without due process are subject to suit under 42 U.S.C. § 1983. *Id.*

---

[2] Under Sixth Circuit precedent, the complaint is deemed filed when handed to prison authorities for mailing to the federal court. *Shelton v. Edge*, No. 00-5265, 2000 WL 1679432, at *1 (6th Cir. Oct. 31, 2000). Plaintiff dated his Verified Complaint (ECF No. 1) on July 22, 2014. It was received by the Court on July 28, 2014.

(4:14CV1645)

The Due Process Clause has a procedural component and a substantive one. The two components are distinct from each other because each has different objectives, and each imposes different constitutional limitations on government power. A procedural due process limitation, unlike its substantive counterpart, does not require that the government refrain from making a choice to infringe upon a person's life, liberty, or property interest. It simply requires that the government provide "due process" before making such a decision. *Howard v. Grinage,* 82 F.3d 1343, 1349-53 (6th Cir. 1996). The goal is to minimize the risk of erroneous deprivation, to assure fairness in the decision-making process, and to assure that the individual affected has a participatory role in the process. *Id.* Procedural due process requires that an individual be given the opportunity to be heard "in a meaningful manner." *See Loudermill v. Cleveland Bd. of Educ.,* 721 F.2d 550, 563 (6th Cir. 1983). Many procedural due process claims are grounded on violations of state-created rights, or rights that do not enjoy constitutional standing. *See id.* The rationale for granting procedural protection to an interest that does not rise to the level of a fundamental right is to prevent the arbitrary use of government power. *Howard,* 82 F.3d at 1349. Procedural due process claims do not consider the egregiousness of the deprivation itself, but only question whether the process accorded prior to the deprivation was constitutionally sufficient. *Id.* at 1350. Although the existence of a protected liberty or property interest is the threshold determination, the focus of this inquiry centers on the process provided, rather than on the nature of the right.

Substantive due process, on the other hand, serves the goal of preventing "governmental power from being used for purposes of oppression," regardless of the fairness of the procedures

(4:14CV1645)

used. See *Daniels*, 474 U.S. at 331. Substantive due process serves as a vehicle to limit various aspects of potentially oppressive government action. *Id.* It serves as a check on legislation that infringes on fundamental rights otherwise not explicitly protected by the Bill of Rights; or as a check on official misconduct which infringes on a "fundamental right;" or as a limitation on official misconduct, which although not infringing on a fundamental right, is so literally "shocking to the conscience," as to rise to the level of a constitutional violation. *Howard*, 82 F.3d at 1349.

Plaintiff claims he was placed in administrative segregation without due process. Prisoners have narrower liberty and property interests than other citizens as "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (citation and internal quotation marks omitted). The question of what process is due is answered only if the inmate establishes a deprivation of a constitutionally protected liberty or property interest. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Due Process Clause, standing alone, confers no liberty or property interest in freedom from government action taken within the sentence imposed. *Sandin*, 515 U.S. at 480. "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* at 485. "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221.

(4:14CV1645)

The Supreme Court in *Sandin* established the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause for a prisoner. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" *Sandin*, 515 U.S. at 487, or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Generally, unless the placement in segregation is accompanied by a withdrawal of good time credits or is for a significant period of time that presents an unusual hardship on the inmate, no liberty or property interest will be found in the case. *Id.* Assignment to a super-maximum security prison, for example, triggers due process protections, *Wilkinson*, 545 U.S. at 224, while temporary placement in segregation was considered to be "within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life," *Sandin*, 515 U.S. at 487.

In this case, good time credits were not at issue because Plaintiff was placed in administrative segregation, not disciplinary segregation. The only remaining inquiry is whether the length of time he spent in segregation constituted an atypical or significant hardship in relation to ordinary incidents of prison life. He alleges he was initially placed in administrative segregation in August 2012 while the investigation was conducted into his sexual contact with Property Room Supervisor Guerriero. At the conclusion of the investigation in October 2012, he was told he would be transferred due to the nature of the incident. He remained in segregation until he was transferred in April 2013. He spent a total of 137 days in administrative segregation. His placement was not indefinite, nor was it exceptionally long in duration. The Sixth Circuit

(4:14CV1645)

has found no liberty interest in much longer periods of time in administrative segregation. *See Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) (two years of segregation while inmate was investigated for murder of prison guard in riot was not atypical or a significant hardship in relation to prison life); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997) (finding no atypical or significant hardship in inmate's placement in segregation for one year after inmate was found guilty of possession of illegal contraband and assault and when reclassification was delayed due to prison crowding); *Bradley v. Evans*, No. 98-5861, 2000 WL 1277229, at *7 (6th Cir. Aug. 23, 2000) (and numerous cases cited therein in support of holding that placement for 14 months in administrative segregation did not impose an atypical or significant hardship on the prisoner); *Collmar v. Wilkinson*, No. 97-4374, 1999 WL 623708, at *3 (6th Cir. Aug.11, 1999) (30 days in security control, 14 days in disciplinary control and six to eight months in administrative control did not constitute an "atypical hardship" under *Sandin* ). Plaintiff's placement in administrative segregation pending an investigation and his transfer were not sufficient to trigger procedural due process protections.

Plaintiff cannot assert substantive due process claims against employees of the private prison under *Bivens*. His placement in administrative segregation did not violate a fundamental right not specified in the Bill of Rights, and the action alone is not so egregious that it shocks the conscience. He cannot assert that other actions of Defendants deprived him of substantive due process. The allegations supporting those claims have remedies available under state tort law. *Minneci*, 132 S.Ct. at 625.

(4:14CV1645)

### C. State Law Claim

Plaintiff also includes a claim arising under state law for intentional infliction of emotional distress. The statute of limitations for filing this claim, however, has expired. The statute of limitations which applies to the intentional infliction of emotional distress can vary depending on the type of action giving rise to the claim. Generally, the applicable statute of limitations for a claim of intentional infliction of emotional distress is four years. When the acts underlying the claim would support another tort, however, the statute of limitations for that other tort governs the claim for intentional infliction of emotional distress. *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984). In essence, an intentional infliction of emotional distress claim is parasitic to another claim for purposes of the statute of limitations. *Manin v. Diloreti*, 94 Ohio App.3d 777, 779 (1994). That way, a plaintiff cannot obtain a longer statute of limitations simply by recharacterizing the fundamental nature of his claim as one of intentional infliction of emotional distress.

Here, Plaintiff's intentional infliction of emotional distress claim is premised on the "Defendants' act of lacing Plaintiff's food with chemicals and other hazardous substances." He also alleges he "was forced to perform sex acts on several occasions which deprived Plaintiff of his rights to be free from Infliction of Emotional Distress." ECF No. 1 at PageID #: 34. He also contends he was subjected to "37 weeks of solitary confinement under freezing temperatures, serv[ed] bug infected meals [and] poison food, . . . den[ied] adequate medical treatment". . . and endured "invasive pat-downs." ECF No. 1 at PageID #: 35. Plaintiff's claims best resemble assault and battery. Ohio Rev. Code § 2305.111 specifies that a one-year statute of limitations

(4:14CV1645)

applies to actions for assault and battery. His claim pertaining to confinement in solitary confinement can also be construed as a claim for false imprisonment. The one-year statute of limitations set out in Ohio Rev. Code § 2305.11 applies to a claim of false imprisonment. *Mayes v. City of Colombus*, 105 Ohio App.3d 728, 746 (1995). The acts in question occurred between January 2012 and April 16, 2013. He filed this action on July 22, 2014, beyond the expiration of either statute of limitations period.

### IV. Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. § 1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[3]

IT IS SO ORDERED.

  April 27, 2015                        /s/ Benita Y. Pearson
Date                                   Benita Y. Pearson
                                       United States District Judge

---

[3] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

14